DAVID B. CASSELMAN (SBN 81657)
dbc@casselmanlawgroup.com
KIRK S. COMER (SBN 240847)
ksc@casselmanlawgroup.com
**CASSELMAN LAW GROUP**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 609-2323
Facsimile: (818) 705-8147

Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>PETER HUGH POCKLINGTON,<br>Defendant. | CASE NO. ED-09-43-VAP<br>[Assigned to the Honorable Virginia A. Phillips]<br>**NOTICE OF MOTION OF NON-PARTY JUDGMENT CREDITORS TO LEVY ON BAIL DEPOSIT POSTED BY DEFENDANT AND JUDGMENT DEBTOR PETER POCKLINGTON;**<br>**MEMORANDUM OF POINTS AND AUTHORITIES;**<br>**DECLARATION OF KIRK S. COMER**<br>Date: March 9, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on March 9, 2015 at 2:00 p.m. or as soon thereafter as counsel may be heard in Courtroom 2, 2nd Floor, of the above-entitled Court, located at 3470 12th Street, Riverside, California 92501, non-parties and judgment creditors The Ageless Foundation, Inc. and Naomi Balcombe

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

(collectively, "Balcombe") will, and hereby do, move the Court for an order providing that when it releases the $100,000 cash bail ("Bail") posted by Defendant Peter Pocklington ("Pocklington"), it be applied to satisfy a small portion of the outstanding judgment owed by Pocklington to Balcombe. [1]

This motion is made on the following facts. Balcombe is a judgment creditor of Pocklington, with a federal writ of execution issued by the Central District of California. It permits enforcement of a federal judgment against Pocklington up to $1,112,460.54. While Pocklington has never paid any portion of the judgment owed to Balcombe, he has recently managed to post a $100,000.00 bond to keep himself out of jail pending his appeal of this Court's finding that he violated the terms of his supervised release.

Upon resolution of that appeal and after the Bail has served its purpose, Pocklington will undoubtedly seek the return of the funds in question. It is respectfully submitted that this Court should order the Bail released to satisfy a small portion of the Balcombe judgment rather than allow it to be returned to Pocklington. As set forth *infra,* both California and federal law authorize this request.

Counsel for Balcombe met and conferred with counsel for both Defendant Mr. Pocklington and Plaintiff the United States more than seven days prior to the filing of this motion pursuant to Central District of California Local Rule 7-3.

---

[1] Balcombe brings this motion via regular notice. However, if the Court of Appeal resolves the Pocklington appeal prior to the ruling on this motion, ex parte relief may be necessary to prevent exoneration of the Bail.

This motion is based upon this Notice of Motion, the Memorandum of Points and Authorities and the Declaration of Kirk S. Comer filed concurrently herewith, the pleadings and papers on file herein, and upon all further evidence and argument as may be hereafter presented.

DATED: January 22, 2015

**CASSELMAN LAW GROUP**

By: /s/ Kirk S. Comer
KIRK S. COMER
Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 3

LEGAL ARGUMENT ........ 5

A. APPLYING THE BAIL TO THE OUTSTANDING BALCOMBE JUDGMENT IS AUTHORIZED BY CALIFORNIA LAW. ........ 5

B. APPLYING THE BAIL TO THE OUTSTANDING BALCOMBE JUDGMENT IS AUTHORIZED BY FEDERAL LAW ........ 8

C. THE FACT THAT POCKLINGTON FUNNELED THE BAIL MONEY THROUGH AN ENTITY HE CONTROLS IS NO DEFENSE. ........ 11

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Coffee v. Haynes*
(1899) 124 C 561, 567, 57 P 482, 484 .......... 6

*Credit Bureau of San Diego v. Getty*
(1943) 61 Cal.App.2d Supp. 823, 830-832 .......... 6

*Dunsmoor v. Furstenfeldt*
(1891) 88 C 522, 26 P 518 .......... 6, 7

*Phoenix v. Kovacevich*
(1966) 246 Cal.App.2d 774, 778 .......... 10

*U.S. v. Van Cauwenberghe*
(9th Cir. 1991) 934 F.2d 1048, 1061-62 .......... 8, 9, 10, 11

## STATUTES

California Code of Civil Procedure §695.010 .......... 5

Political Code Section 4292a .......... 7

## OTHER AUTHORITIES

Ahart, Alan M., Cal. Prac. Guide Enf. J. & Debt Ch. 6D-3 (The Rutter Group 2014), 6:1321 .......... 5

Ahart, Alan M., Cal. Prac. Guide Enf. J. & Debt Ch. 6G-1 (The Rutter Group 2014), 6:406-6:407 .......... 6

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

The Ageless Foundation, Inc. and Naomi Balcombe (collectively, "Balcombe") have long been trying to collect on the $1,112,460.54 judgment ("Judgment") owed to them by defendant Peter Pocklington ("Pocklington"). Pocklington has never paid any money whatsoever to Balcombe, and *he owes his other judgment creditors in excess of $13 million.* [2]

Pocklington has the money to pay all or a substantial portion of both judgments. He simply does not want to pay either. Documents obtained by Balcombe from the Government in this matter show that Pocklington disclosed receiving $300,000.00 a year income, spending $20,136.65 a month on expenses, and still having an additional "net monthly cash flow" of $7,057.35.

In addition, Pocklington has had enough money to pay numerous different law firms to defend him in civil and criminal proceedings, pay attorneys to prosecute appeals, take a personal trip to Canada to reunite with the professional hockey tem he used to own, and even post a $100,000 cash bond ("Bail") to keep himself out of prison while prosecuting his appeal.

It is only equitable that when the Pocklington appeal is concluded, the Bail money in question be used to partially satisfy the judgment owed to Balcombe

---

[2] In addition to representing Balcombe, this firm also represents the government of Alberta, Canada pursuing an unpaid judgment against Pocklington in excess of $13 million. That judgment has been domesticated in the California state court system.

rather than be returned to him. But, not only is that equitable, as discussed below, the requested relief is directly authorized by both federal and California law.

As a judgment debtor, all property belonging to Pocklington is subject to enforcement of the Judgment, including the Bail. That is all that Balcombe seeks here. Once the Pocklington appeal is resolved, Balcombe requests that this Court order that the Bail money be used to satisfy a small portion of the outstanding Balcombe judgment rather than return those funds to Pocklington.

As part of the meet and confer process counsel engaged in prior to the filing of this motion, Balcombe learned that Pocklington intends to oppose this motion on the ground that DTR Holdings LLC provided the Bail, and therefore the money belongs to that entity and cannot be levied upon by creditors of Pocklington. This is the latest transparent ruse by Pocklington to protect his assets.

DTR Holdings LLC is a company that Pocklington controls, which he uses to shield his assets form his creditors. The evidence is transparent. DTR Holdings LLC is a sole member limited liability company, owned entirely (on paper) by his wife, Eva Pocklington. Pocklington, however, controls DTR Holdings LLC as its manager and has the ability to, and does, sign checks for the company. Plus, Pocklington causes DTR Holdings LLC to pay him $300,000 a year, which accounts for 92% of his yearly income.

In any event, once Pocklington directed and caused DTR Holdings LLC to post $100,000 to be used for his bail, it ceased being owned by the company and became an asset of his.

In summary, Pocklington must not be permitted to continue to hide behind

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

companies he creates in order to avoid the payment of lawful judgments.

## FACTUAL BACKGROUND

As this Court may recall, Balcombe previously appeared in this matter and successfully moved to intervene as a third party and unseal hearing exhibits to assist in judgment collection efforts. Those hearing exhibits identified a bank account belonging to Pocklington. But, when Balcombe levied on the account, **Pocklington had already removed all his money from the account and closed it before the levy could be effectuated**. Balcombe believes that Pocklington keeps his money overseas and operates through local corporate accounts not in his name (thus preventing a direct levy). But, he likely controls all of those funds.

Balcombe has long been attempting to collect on a judgment entered against Pocklington in the United States District Court for the Southern District of Florida. The judgment was originally $806,475.60 ("Judgment"). On June 8, 2007, the Judgment was registered in the Central District of California. [3] The Central District of California recently issued a writ of execution allowing collection of the sum of $1,112,460.54, representing the Judgment plus accrued interest. [4] Pocklington never paid anything to satisfy any portion of this Judgment, despite the fact that he clearly could if he wanted to do so. The hearing exhibits Balcombe obtained reveal that Pocklington lives an extravagant lifestyle ($241,632 in yearly expenses) allegedly

[3] The California registered judgment (Case No. 5:08-cv-01344-JFW-OP) is attached to the Declaration of Kirk. S. Comer ("Comer Decl.") as Exhibit "A".

[4] The current writ of execution is attached to the Comer Decl. as Exhibit "B".

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

on a yearly income of $300,000.00. [5]

The sordid tale that led Pocklington to this Court need not be repeated here, as this Court is undoubtedly familiar with the facts. What is important for purposes of this motion is that this Court sentenced Pocklington to two years supervised release in connection with his guilty plea for perjury in connection with the bankruptcy petition he filed to dodge creditors.

Thereafter, the United States brought charges against Pocklington alleging violations of the terms of his supervised release. This Court ultimately found that Pocklington indeed violated the terms of his supervised release and sentenced him to six months confinement plus an additional two years supervised release.

Pocklington appealed and requested bail.[6] This Court granted that request, and on November 8, 2013, ordered Pocklington to post a $100,000 cash deposit with the Court.[7] On or about November 26, 2013, Pocklington posted the $100,000 cash bond. [8]

As the court docket for the appeal shows, the opening, answering and reply briefs have all been filed. The reply brief was filed December 8, 2014.[9] Balcombe

---

[5] The portions of the hearing exhibits showing the income of expenses of Pocklington are attached to the Comer Decl. as Exhibit "C".

[6] The appeal is Case No. 13-50461.

[7] The Court order setting bail is attached to the Comer Decl. as Exhibit “D”.

[8] The bond pending appeal is attached to the Comer Decl. as Exhibit “E”.

[9] A copy of the appellate docket report is attached to the Comer Decl. as Exhibit “F”.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

does not know when the appeal will be resolved. However, if the appeal is resolved prior to the haring on this motion, Balcombe may need to seek ex parte relief to prevent the exoneration of the Bail.

## LEGAL ARGUMENT

### A. APPLYING THE BAIL TO THE OUTSTANDING BALCOMBE JUDGMENT IS AUTHORIZED BY CALIFORNIA LAW.

There is no question that this Court may order the bail posted by a defendant in a criminal matter applied to an outstanding judgment. California Code of Civil Procedure §695.010 provides "Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." Bail money is simply property of the judgment debtor like any other asset. The California Practice Guide: Enforcing Judgments and Debts succinctly explains:

> "**PRACTICE POINTER:** If the examinee is arrested and posts bail, **ask the judge to order that the debtor's interest in the bail (whether cash or property) be applied to satisfy the judgment. Alternatively, the bail can be garnished by serving a writ of execution on the court clerk** (see ¶ 6:407)."[10]

Ahart, Alan M., Cal. Prac. Guide Enf. J. & Debt Ch. 6D-3 (The Rutter Group 2014), 6:1321.

---

[10] All emphasis in quoted material is added, unless otherwise noted.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

"**Compare—garnishment of debtor's property held by public officers:** While public entities are not subject to garnishment for monies owed to the judgment debtor (above), public officers may be if they have possession or control of property belonging to the judgment debtor. [See *Coffee v. Haynes* (1899) 124 C 561, 567, 57 P 482, 484]

For example:

a) [6:407] **Bail deposits, after exoneration of bail, may be reached by serving garnishment on the court clerk, who controls disposition of such funds** (even though they are physically in the county treasury). [See *Dunsmoor v. Furstenfeldt* (1891) 88 C 522, 26 P 518; and *Credit Bureau of San Diego v. Getty* (1943) 61 CA2d Supp. 823, 830, 142 P2d 105, 108]"

Ahart, Alan M., Cal. Prac. Guide Enf. J. & Debt Ch. 6G-1 (The Rutter Group 2014), 6:406-6:407.

The cases cited by the practice guide affirm the right of a creditor to levy on bail posted by a judgment debtor. In *Credit Bureau of San Diego v. Getty* (1943) 61 Cal.App.2d Supp. 823, 830-832 (citing *Dunsmoor v. Furstenfeldt* (1891) 88 Cal. 522), the California Court of Appeals explained that bail money deposited to the court by an accused (judgment debtor) is subject to levy after the court orders the bail exonerated:

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**"In *Dunsmoor v. Furstenfeldt, supra*, it was distinctly held that when funds had been deposited in court, the clerk, as soon as the court had determined who was lawfully entitled to them, was subject to an ordinary garnishment at the suit of a creditor of such beneficiary.** This was tantamount to deciding that, at that stage of the proceeding, the clerk was the debtor of the beneficiary. *Dunsmoor v. Furstenfeldt*, indeed, was decided before the enactment of section 4292a of the Political Code providing for the deposit of trust funds in the county treasury. That the clerk remains accountable, however, for bail money, despite its deposit with the county treasurer, was as has been seen, expressly decided in *Leach v. Dinsmore, supra*, wherein his liability was held to persist, even after the (wrongful) allocation of the money for the use and benefit of a city. Reciprocally it seems to us logical to hold that, section 4292a being thus ineffectual to relieve the clerk of his obligation to the depositor of the bail, the section is equally ineffectual to give rise to any privity between the county and such depositor and that by that token, inasmuch as the county auditor is a mere agent of the county and not the court, from the fact that nothing is "owing and unpaid" from the county to the depositor of the bail, it necessarily follows that the auditor owes such depositor no duties in connection with the same until some action on his part is invoked, either by the court or its clerk. **The effect of this reasoning is not to deprive the one who has deposited**

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

> **bail in court of his remedy in the event he becomes entitled to its return. His right is at the proper time and after it has served its purpose as bail to claim its return from the clerk, and it follows that the creditors of such depositor may reach it by levying upon it** as being to all intents and purposes in the possession of the clerk, though it in fact be placed physically for safekeeping in the county treasury.
>
> * * *
>
> Regardless of that proposition, however, **this money [bail] was certainly subject to levy, as in the hands of the clerk, after the court made its order definitely determining that Osborne [criminal defendant and judgment debtor] was entitled to it** on May 17, 1943, two days before it was actually paid to him.

Hence, it is evident from the foregoing that after the bail has served its purpose and is to be returned to the defendant judgment debtor, it is subject to levy by creditors. As set forth below, federal law is in accord.

## B. APPLYING THE BAIL TO THE OUTSTANDING BALCOMBE JUDGMENT IS AUTHORIZED BY FEDERAL LAW.

In *U.S. v. Van Cauwenberghe* (9th Cir. 1991) 934 F.2d 1048, 1061-62 the Ninth Circuit (deciding an appeal of decisions from the United States District Court for the Central District of California) "addressed the question whether a third-party

victim might attach seized property in the registry of the court to satisfy a prospective civil judgment… where the property was not directly connected with the victim's loss." The Ninth Circuit answered this question in the affirmative.

As in this case, *Van Cauwenberghe* involved a criminal defendant and judgment debtor (Van Cauwenberghe) in the Central District of California. Prior to the trial in the criminal case, the government seized stock certificates belonging to Van Cauwenberghe. At the conclusion of the criminal case, Van Cauwenberghe allowed the government to sell the stock certificates and apply the proceeds to satisfy his court ordered restitution. An excess remained after restitution (the "Residual Fund"), which both Van Cauwenberghe and his judgment creditors sought. The Court ordered the clerk to pay the Residual Fund to the creditors, and Van Cauwenberghe appealed the order.

The Ninth Circuit began its analysis noting that property held by a court (such as bail money) is considered "*custodia legis*" and generally not subject to attachment or garnishment. *Id.* at 1062. The reason, the Court explained, is that "the common law doctrine of *custodia legis* prohibits any attachment of property in a court's registry that would prevent the court from allocating the property in accord with the purpose for which it was deposited" and also avoided "a clash between judicial jurisdictions." *Ibid.*

But, despite the general rule to the contrary, the *Van Cauwenberghe* Court went on to affirm the court order allowing the Residual Fund (money in *custodia legis*) to be paid to the creditors. The reason was that, as here, those two dominant factors that usually preclude a creditor from seizing property in *custodia legis* were not present.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

First, in *Van Cauwenberghe*, there was no risk of a "clash between judicial jurisdictions" (where process from one judicial authority is used to try and seize assets in the control of another) because both the criminal case and the civil case were from the District Court in the Central District of California. *Id.* at 1063. That is the exact situation here where Balcombe seeks to enforce a California Central District Judgment by reaching monies held in this California Central District Court.

Next, and probably most important, the Ninth Circuit in *Van Cauwenberghe* upheld the transfer of money to the creditors noting that the government possessed no remaining interest in the Residual Fund, and **its seizure did not affect that court from allocating the property in line with why it was deposited**. *Id.* at 1062-63. Indeed, at the time the Residual Fund was paid to the creditors, the restitution was complete. But for the seizure by the creditors, the district court, no longer needing custody of the Residual Fund, likely would have returned it to Van Cauwenberghe.

Again, that is the situation before this Court now, where the Bail is currently serving the purpose for why it was deposited with the Court. However, at the time the Pocklington appeal is resolved and the Bail ceases to be necessary, it would ordinarily be released to Pocklington. But, given the circumstances, it should be applied to the Balcombe Judgment.

In fact, the Ninth Circuit in *Van Cauwenberghe* found an order directing the payment of the Residual Fund to the creditors consistent with California law. *Id.* at 1063-64 ["'California courts have held that the doctrine of " '[c]ustodia legis' is a legal principle evolved to prevent outside interference with a court's jurisdiction to deal with property in its custody, **it is not a principle designed to govern the court's dispositional power over such property.**" [Citations Omitted] "']; *Phoenix v. Kovacevich* (1966) 246 Cal.App.2d 774, 778 ["**The California courts have**

**consistently held that property in *custodia legis* may be levied upon if permission is first obtained from the court exercising such custody.**"]

Given the circumstances, the same result reached in *Van Cauwenberghe* should obtain here.

**C. THE FACT THAT POCKLINGTON FUNNELED THE BAIL MONEY THROUGH AN ENTITY HE CONTROLS IS NO DEFENSE.**

Nobody disputes Mr. Pocklington is expert at shielding his assets from his creditors. Pocklington is successful at this as he operates through companies not held in his name. DTR Holdings LLC is such a company.

The documents the United States used to establish that Pocklington violated the terms of his supervised release show that DTR Holdings LLC is an entity Pocklington controls and uses as his personal piggy bank. Eva Pocklington (Mr. Pocklington's wife) is listed in the DTR Holdings LLC operating agreement as the sole member.[11] The documents executed to set up the DTR Holdings LLC bank account with Rabobank, N.A. in Palm Desert California describe Pocklington as the "managing member" of the entity.[12] Critically, these documents expressly provide Pocklington with the power to "endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit" from company account.

---

[11] Attached to the Comer Decl. as Exhibit "G" is the DTR Holdings LLC operating agreement.

[12] Attached to the Comer Decl. as Exhibit "H" is the account agreement between DTR Holdings LLC and Rabobank, N.A.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

Pocklington exercises that power, likely exclusively. For example, the July 2012 Rabobank statement for the DTR Holdings LLC account shows that 19 checks were written against the corporate account. Every one, including check #197 in the amount of $1,000 that Pocklington wrote to himself, appear to be signed by Pocklington.[13]

But, the $1,000 check is the tip of the iceberg. The statement of income and expenses Pocklington filed with the government discloses that he receives $300,000 annual income from DTR Holdings LLC.[14] That same document discloses that Pocklington spends $241,639.80 on annual expenses, and has excess income of $84,688.20 after paying those expenses. This means that the money Pocklington receives (or more correctly pays to himself) from DTR Holdings LLC accounts for 92% of his yearly income.

The import of the foregoing is not lost on anyone. Pocklington transparently uses DTR Holdings LLC as an asset protection vehicle, controlling the entity and using the corporate money as if it were his own. This Court, however, should not permit Pocklington hide behind DTR Holdings LLC to preclude Balcombe from collecting her judgment.

## CONCLUSION

Based on the foregoing, Balcombe respectfully submits that this Court should

---

[13] Attached to the Comer Decl. as Exhibit "I" is July 2012 statement for the DTR Holdings LLC bank account with Rabobank, N.A.

[14] See Exhibit "C" to the Comer Decl.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

order that upon resolution of the Pocklington appeal, the $100,000 cash bail Defendant Peter Pocklington (or DTR Holdings LLC) deposited with this Court be applied to the Balcombe judgment against Pocklington instead of being returned to him.

DATED: January 22, 2015

**CASSELMAN LAW GROUP**

By: /s/ Kirk S. Comer
KIRK S. COMER
Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**DECLARATION OF KIRK S. COMER IN SUPPORT OF MOTION OF NON-PARTY JUDGMENT CREDITORS TO LEVY ON BAIL DEPOSIT POSTED BY DEFENDANT AND JUDGMENT DEBTOR PETER POCKLINGTON**

Kirk S. Comer declares:

1. I am an attorney licensed to practice in the State of California. I am an attorney with Casselman Law Group, attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe (collectively, "Balcombe").

2. I am one of the attorneys principally responsible for the handling of this matter. I am personally familiar with the facts set forth in this declaration. If called as a witness I could and would competently testify to the matters stated herein.

3. Balcombe previously appeared in this case and successfully moved to intervene as a third party and unseal hearing exhibits ("Hearing Exhibits") to assist in judgment collection efforts. The Hearing Exhibits identified a bank account belonging to Pocklington. However, when Balcombe levied on the account, Pocklington had removed all of his money from the account and closed it before the levy could be effectuated.

4. Balcombe believes that Pocklington keeps his money overseas and operates through local corporate accounts not in his name (thus preventing a direct levy), but which he likely controls.

5. Balcombe is attempting to collect on a judgment entered against Pocklington in the United States District Court for the Southern District of Florida,

originally for the sum of $806,475.60 ("Judgment"). On June 8, 2007, the Judgment was registered in the Central District of California (Case No. 5:08-cv-01344-JFW-OP). A true and correct copy of the California registered judgment is attached hereto as Exhibit "A".

6. Balcombe obtained a writ of execution issued by the Central District of California allowing collection of the sum of $1,112,460.54, representing the Judgment plus accrued interest. A true and correct copy of the current writ of execution is attached hereto as Exhibit "B".

7. Pocklington never paid any amounts to satisfy any portion of the Judgment. Contained in the Hearing Exhibits is a statement of assets and cash flows that Pocklington submitted to the government. They reveal that Pocklington should easily be able to pay the outstanding Judgment as Pocklington disclosed receiving $300,000.00 a year income, spending $20,136.65 a month on expenses ($231,639.80 per year), and still having a "net monthly cash flow" of $7,057.35 ($84,688.20 per year) after paying these expenses. A true and correct copy of the portions of the hearing exhibits, which appear to be initialed and signed by Pocklington, are attached hereto as Exhibit "C".

8. I understand that this Court previously sentenced Pocklington to two years supervised release in connection with his pleading guilty to perjury in connection with a bankruptcy petition he filed. Thereafter, I understand that the United States brought charges against Pocklington alleging violations of the terms of his supervised release. This Court ultimately found that Pocklington violated the terms of his supervised release and sentenced him to six months confinement plus an additional two years supervised release.

9. Pocklington appealed this order and requested bail. The appeal is Case No. 13-50461.

10. This Court granted that request for bail, and on November 8, 2013, ordered Pocklington to post a $100,000 cash deposit with the Court. A true and correct copy of that order is attached hereto as Exhibit "D".

11. On or about November 26, 2013, Pocklington posted the $100,000 cash bond. A true and correct copy of the bond pending appeal is attached hereto as Exhibit "E".

12. The court docket for the appeal shows that the opening, answering and reply briefs have all been filed, the latter filed on December 8, 2014. A true and correct copy of the docket report, run January 7, 2015 and printed from PACER, is attached hereto as Exhibit "F".

13. Balcombe does not know when the Pocklington appeal will be resolved, but it may be resolved prior to the resolution of this matter. If it becomes necessary, Balcombe may need to apply to this Court ex parte to prevent the release of the Bail to Pocklington.

14. I met and conferred with all counsel prior to the filing of this motion in compliance with Central District of California Local Rule 7-3. On or around June 17, 2014, I spoke with Assistant U.S. Attorney Joseph B. Widman, counsel for Plaintiff United States. I advised him of the motion Balcombe intended to file, and Mr. Widman advised that the United States had "no position" and would wait until receipt of the motion to respond, if at all.

15. On or about December 5, 2014 (and continuing thereafter), I spoke with Becky Walker James, counsel for Pocklington. I advised her of the motion Balcombe intended to file, and she responded that Pocklington intended to oppose the motion. Specifically, Ms. James advised me that Pocklington intended to oppose the motion on the ground (among possibly others) that DTR Holdings LLC posted the Bail and not Pocklington.

16. The Hearing Exhibits contained the operating agreement for DTR Holdings LLC showing that Eva Pocklington is the sole member of the entity. A true and correct copy of the operating agreement is attached hereto as Exhibit "G".

17. The Hearing Exhibits contained the account agreement between DTR Holdings LLC and Rabobank, N.A. in Palm Springs, California showing that Pocklington is the "managing member" of DTR Holdings LLC. (Bates stamped pages 00185, 00187, 00189.) This agreement also shows that Pocklington a signatory on the corporate account with the power to "endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit" from company account. (Bates stamped pages 00187.) A true and correct copy of the account agreement is attached hereto as Exhibit "H".

/ / /

/ / /

/ / /

/ / /

18. The Hearing Exhibits show that Pocklington exercises control over the bank account for DTR Holdings LLC. For example, the July 2012 Rabobank, N.A. statement for the DTR Holdings LLC account show that 19 checks were written, all of which appear to be signed by Pocklington, including check #197 in the amount of 1,000 that Pocklington wrote to himself. A true and correct copy of the July 2012 Rabobank, N.A. statement for the DTR Holdings LLC account is attached hereto as Exhibit "I".

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: January 22, 2015.

*/s/ Kirk S. Comer*
Kirk S. Comer

## CERTIFICATION OF SERVICE

I hereby certify that on January 22, 2015 I electronically filed a document entitled: **NOTICE OF MOTION ON NON-PARTY JUDGMENT CREDITORS TO LEVY ON BAIL DEPOSIT POSTED BY DEFENDANT AND JUDGMENT DEBTOR PETER POCKLINGTON; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF KIRK S. COMER** with the Clerk of the Court using the CM/ECF system.

Respectfully Submitted,

*/s/Kirk S. Comer*
Kirk S. Comer