DAVID B. CASSELMAN (SBN 81657)
dbc@casselmanlawgroup.com
KIRK S. COMER (SBN 240847)
ksc@casselmanlawgroup.com
**CASSELMAN LAW GROUP**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 609-2323
Facsimile: (818) 705-8147

Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>PETER HUGH POCKLINGTON,<br><br>Defendant. | CASE NO. ED-09-43-VAP<br><br>[Assigned to the Honorable Virginia A. Phillips]<br><br>**REPLY OF THE AGELESS FOUNDATION AND BALCOMBE IN SUPPORT OF MOTION TO LEVY ON BAIL OF NON-PARTY JUDGMENT CREDITORS**<br><br>Date: March 9, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |

Non-Party judgment creditors The Ageless Foundation, Inc. and Naomi Balcombe (collectively, "Balcombe") hereby submit the following reply memorandum of points and authorities in support of the Motion to Levy on Bail Deposit.

DATED: March 3, 2015       **CASSELMAN LAW GROUP**


By: /s/ Kirk S. Comer
KIRK S. COMER
Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

DAVID B. CASSELMAN (SBN 81657)
   dbc@casselmanlawgroup.com
KIRK S. COMER (SBN 240847)
   ksc@casselmanlawgroup.com
**CASSELMAN LAW GROUP**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 609-2323
Facsimile: (818) 705-8147

Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>vs.<br><br>PETER HUGH POCKLINGTON,<br><br>       Defendant. | CASE NO. ED-09-43-VAP<br><br>[Assigned to the Honorable Virginia A. Phillips]<br><br>**REPLY OF THE AGELESS FOUNDATION AND BALCOMBE IN SUPPORT OF MOTION TO LEVY ON BAIL OF NON-PARTY JUDGMENT CREDITORS**<br><br>Date: March 9, 2015<br>Time: 2:00 p.m.<br>Place: Courtroom 2 |

Non-Party judgment creditors The Ageless Foundation, Inc. and Naomi Balcombe (collectively, "Balcombe") hereby submit the following reply memorandum of points and authorities in support of the Motion to Levy on Bail Deposit.

DATED: March 3, 2015        **CASSELMAN LAW GROUP**

                                   By: /s/ Kirk S. Comer
                                        KIRK S. COMER
                                Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

LEGAL ARGUMENT ................................................................................................. 4

    1.    THE PROCEDURAL ARGUMENTS ........................................................ 4

        A.    DTR is Not an Indispensible Party ................................................. 4

        B.    This Motion is Proper With or Without Intervention ................... 4

        C.    The Motion is Ripe ........................................................................ 6

    2.    THE SUBSTANTIVE ARGUMENTS ....................................................... 7

        A.    Evidence Establishes That Pocklington Owns The Bail Money ................................................................................................... 7

        B.    Pocklington Fails to Rebut His Ownership of the Bail Money ................................................................................................... 9

        C.    The Authorities Cited By Mr. Pocklington Are Inapposite ....... 10

        D.    Mr. Pocklington Is The Alter Ego Of DTR ................................. 11

CONCLUSION .......................................................................................................... 13

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# TABLE OF AUTHORITIES

**Page**

**CASES**

*States v. Alisal Water Corp.*,
  370 F.3d 915, 919 (9th Cir. 2004) .................................................................. 5

*United States v. Bursey*,
  515 F.2d 1228 (5th Cir. 1975) ....................................................................... 11

*United States v. Parr*,
  594 F.2d 440 (5th Cir. 1979) ......................................................................... 11

*United States v. Rubenstein*,
  971 F.2d 288 (9th Cir. 1992) ......................................................................... 11

*United States v. Salyer*,
  No. 2:10-CR-0061 LKK, 2014 WL 412088 (E.D. Cal. Feb. 3, 2014) .......... 11

*Wady v. Provident Life & Accident Ins. Co. of Am.*,
  216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) .............................................. 11

**STATUTES**

Fed. R. Civ. P. 24(a)(2) ........................................................................................ 5

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Balcombe has requested that *if and when* this Court exonerates the $100,000 bond Peter Pocklington posted as bail, that it be released to Balcombe to partially satisfy a $1.1 million Central District judgment against Mr. Pocklington. The following facts set the backdrop for the instant motion.

It is undisputed that Balcombe, as a judgment creditor of Mr. Pocklington, possesses the right to levy on his assets to satisfy the judgment. Mr. Pocklington, who is *very* savvy at protecting his property, is well aware of this fact. So, he developed an asset protection strategy. It is simple. He keeps nothing in his own name. Instead, he "manages" companies, which grant him the privilege of being the signatory on the company bank account with full access to "the company's funds."

If Mr. Pocklington personally wants to purchase anything, he simply uses the company account. This has thus far effectively prevented his many creditors from reaching his assets, because on paper he is not the owner of any company. He is only its (master-mind and all-powerful) "manager." Indeed, this Court astutely observed how Mr. Pocklington operates at the hearing where he was found to be in violation of the conditions of his supervised release. The United States put on evidence that Mr. Pocklington caused Liberty Bell Resources (one of the companies Mr. Pocklington "manages" but claims not to own) <u>to wire transfer $8,671 to his doctor for a personal medical procedure</u>. The Government argued that this was undisclosed income, which should have been reported by Mr. Pocklington. Mr. Pocklington countered that this transfer was medical insurance that Liberty Bell paid to him as part of his compensation package.

This Court saw right through the ruse. It found that Mr. Pocklington caused

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  Liberty Bell to pay a clear personal expense from the company account. The Court
2  further found that given his unfettered discretion to spend money form the corporate
3  account, he legally controlled Liberty Bell. Ultimately, the Court determined that
4  Mr. Pocklington should have disclosed the $8,671. Plainly, it was his income.

6  That same story is playing out again now. Peter Pocklington is the sole
7  "manager" of DTR Holdings, LLC ("DTR"). On paper, his wife Eva Pocklington
8  originally owned DTR, although she claims in a declaration filed with this Court to
9  have transferred ownership to a Delaware Trustee **that she declines to name.**
10 However, just as with Liberty Bell, Mr. Pocklington unilaterally controls DTR. As
11 always, his "management" carries with it unfettered control of the funds.

13 Documents Balcombe obtained from this Court when it previously intervened
14 to unseal hearing exhibits ("Hearing Exhibits") prove his control. The Hearing
15 Exhibits show that Mr. Pocklington is the sole manager of DTR, with the authority
16 to spend any amount of money from the corporate account he sees fit. As but one
17 example, the Hearing Exhibits show that in July 2012, Peter Pocklington signed
18 every check that DTR wrote, including a $1,000 check he wrote to himself.

20 But, Mr. Pocklington receives far more from DTR than an occasional $1,000
21 check. In fact, income from DTR appears to be the primary way he finances his
22 lavish lifestyle.[1] Thus, it was not surprising that when Mr. Pocklington needed
23 $100,000 to keep himself out of jail while he appeals the ruling of this Court that he

---

[1] The Hearing Exhibits show that DTR pays Mr. Pocklington $300,000 a year, which accounts for 92% of his (reported) yearly income and explains how he and his wife are able to afford to pay annual household expenses of $241,639.80…of course, all claimed as her income.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  violated the terms of his supervised release, he was able to write a check using DTR
2  money. Specifically, <u>he</u> purchased a cashier's check in the name of DTR and then
3  posted his own bail as if he was using his own money ... which in reality he did.[2]
4
5  Clearly, just as with the $8,671 payment to his doctor from Liberty Bell, this
6  is not a proper corporate expense of any business, and certainly not an expense of
7  DTR. It is a <u>personal expense</u> of Mr. Pocklington that he pulled out of DTR. The
8  bottom line is, he caused DTR to give him this money, then he used it for personal
9  reasons. As such, it became his money, and thus is subject to levy as his property.
10
11  The counter arguments are as expected. Three procedural arguments are
12  advanced as a distraction. The sole substantive argument contends that Balcombe
13  may not levy on the bail because it is owned by "third-party" DTR. Mr. Pocklington
14  proffered a declaration *from his wife* to claim that DTR <u>is financed by *her* separate
15  property.</u> But, she also claims that a Trustee now owns the company. But, no one
16  explains who or why Peter Pocklington would have exclusive control over and the
17  right to spend $100,000 of supposedly corporate funds for his own personal bail.
18
19  For all of the foregoing reasons, as explained in greater detail below,
20  Balcombe respectfully requests that the Court grant the instant motion.

---

[2] The bank records show that there are only two signatories on the DTR account, Mr. and Mrs. Pocklington. Plus, Peter Pocklington is designated as the sole manager of this company. (Comer Declaration, Ex. "G" and "H".)

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

# LEGAL ARGUMENT

## 1. THE PROCEDURAL ARGUMENTS.

### A. DTR is Not an Indispensible Party.

DTR is not an indispensible party. The bail money came from a corporate account managed solely by Peter Pocklington, used by Mr. Pocklington for his own personal expenses. In short, Mr. Pocklington gave corporate money to himself.

Assuming arguendo that DTR is a necessary party, Mr. Pocklington is the <u>sole manager</u> of DTR. (Comer Declaration, Exs. "G" and "H".) He is more than capable of fully representing its interests here … which he is doing.

Plus, as explained in the moving papers, there is no legal separateness between Mr. Pocklington and DTR. He is its alter ego, transparently using DTR as an asset protection vehicle.

### B. This Motion is Proper With or Without Intervention.

Mr. Pocklington argues that the instant motion is procedurally defective. In Opposition papers filed a full week late, he chides Balcombe for failing to "formally" request intervention. Mr. Pocklington then argues that intervention, if requested, should be denied since Balcombe does not have a sufficient connection to the subject matter of this case. Neither argument is well taken.

*First*, to deny this motion because it does not formally seek "intervention" would be to put form over substance, which courts are generally reluctant to do. If a formal request for intervention is necessary, which it does not appear to be, the motion sets forth sufficient facts showing that intervention is proper.

Federal Courts allows an individual to intervene as a matter of right if they

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

"claim[] *an interest relating to the property or transaction that is the subject of the action....*" Fed. R. Civ. P. 24(a)(2).[3] Here, Balcombe asserts a claim to ownership of the bail, falling squarely under the rule providing a mandatory right to intervene.

*Second*, despite what Mr. Pocklington would have this Court believe, intervention by a creditor is not per se impermissible. Mr. Pocklington cites *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004), where the court precluded a creditor from intervening, finding the connection between the creditor claim and the subject of the action too tenuous to support intervention. But, the facts of *Alisal Water Corp.* are readily distinguishable.[4]

Candidly, Balcombe is puzzled why Mr. Pocklington even advances this argument. His Opposition openly recognizes that the motion is proper.[5]

---

[3] All emphasis in quoted material is added unless otherwise noted.

[4] *Alisal* involved a judgment creditor attempting to substantively intervene in the case to prevent the court from instituting a receivership over the judgment debtor defendant's assets. The creditor based its request for intervention on the theory that a potential sale of those assets by the receiver would negatively affect the right of the creditor to collect its judgment from those assets. Not surprisingly, the Court denied the request to intervene.

But, those facts have nothing to do with this case. Here, Balcombe is not attempting to intervene substantively, nor is there any attempt to interfere with this Court's ability to control its case. Rather, Balcombe simply asserts a claim to the bail, which this Court will need to rule upon eventually.

[5] The Opposition states on page six that "[u]nder appropriate circumstances, <u>this Court may hear competing claims regarding exonerated bail funds</u>." Thus, it is difficult to conceive of more appropriate circumstances. Plus, the Opposition also observes on page six that "[t]he court <u>must ... determine</u> to whom the bail monies should be released" and even concedes that in the proper circumstance "**[t]he court** (footnote continued)

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

### C. The Motion is Ripe.

The Opposition argument that the Balcombe motion is not ripe is simply a delaying tactic. There is a <u>current</u> dispute as to ownership of the bail funds, which Mr. Pocklington hopes to put off to take advantage of a timing issue. Once the appeal is resolved, Mr. Pocklington will undoubtedly move to exonerate the bail – on his timetable.

At that time, Balcombe will have a limited window within which to make a claim to those funds. Balcombe would likely be forced to move the Court ex parte to prevent the release of the funds. All parties should be in agreement that an ex parte application is not the best procedure to resolve this dispute. In contrast, resolving the issue now will allow the issue to be fully briefed and considered by the Court on regular notice. Plus, **Balcombe is not requesting that the bail be exonerated now.** Rather, Balcombe requests that <u>if and when</u> the Court releases the Bail, that it be applied to partially satisfy the Balcombe judgment.

Finally, Mr. Pocklington suggests that for policy reasons, the Court should not rule on this motion now because if Mr. Pocklington knows that the bail will not be released to him in the future, then "the court's purpose in requiring the bond is defeated." Opposition p. 5. **Pocklington is effectively claiming he might run if <u>he does not get the bail money back.</u>** <u>But, at the same time, he claims elsewhere it does not belong to him.</u> *The truth is obvious.*

It is hard to keep so many fabricated claims separate without contradicting

---

**may ... release the [bail] money to a third party creditor enforcing a writ against the defendant...."** Of course, that is exactly what Balcombe seeks here.

each other. But, even so, the United States did not oppose this motion, nor has it raised any concerns that resolution of this motion could affect the decision of Mr. Pocklington to surrender himself into custody in the event he loses his appeal.

2. **THE SUBSTANTIVE ARGUMENTS.**

A. **Evidence Establishes That Pocklington Owns The Bail Money.**

Mr. Pocklington only asserts one substantive argument against applying the bail to the Balcombe judgment, which is that the bail money is not his property, belongs to DTR, and thus cannot be reached by his creditors. The evidence belies every piece of that argument.

This is not the case where a creditor is attempting to levy on bail money posted by a *true* third-party. Mr. Pocklington is DTR in everything but name. He controls the company and the corporate account. Most importantly, he uses the corporate account to fund his *personal expenses*. This Court should not permit Mr. Pocklington to use DTR to pay his personal expenses, but then prohibit a valid levy on the ground that DTR is a wholly separate entity. **Once Mr. Pocklington took corporate money to pay his personal expenses, that money became his money.** Mr. Pocklington, acting on behalf of DTR, gave that money to himself for personal use, as shown by two dispositive facts: (1) **Mr. Pocklington Controls DTR Completely, Including Financially;**[6] and, (2) **Mr. Pocklington uses DTR funds to**

---

[6]
• The Operating Agreement for DTR provides that Mr. Pocklington is the sole manager of the company and has "all powers and authority as authorized under Delaware law." Comer Declaration, Ex. "G".

• The paperwork filed with the bank to open the DTR bank account identifies Mr. Pocklington as the "Managing Member" of DTR. Comer Declaration, Ex. "H".

• The paperwork filed with the bank to open the DTR bank account identifies Mr. (footnote continued)

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

pay his Personal Expenses.[7]

This is the normal modus operandi of Mr. Pocklington. **He uses corporate accounts for his personal expenses.** This Court noted this fact when it ruled that Mr. Pocklington violated the terms of his supervised release.[8] At this hearing, the

---

Pocklington as an "Owner/Signer" and provides him with the power to "endorse checks and orders for the payment of money or otherwise withdraw or transfer funds on deposit" from company account. His signature alone is sufficient to bind DTR. Comer Declaration, Ex. "H".

• Mr. Pocklington manages the financial affairs of DTR. Indeed, in the month of July 2012, nineteen (19) checks were written against the corporate account, including one check for $1,000 (#197) that Mr. Pocklington wrote to himself. Mr. Pocklington signed all of these checks. Comer Declaration, Ex. "H".

• Mr. Pocklington lives, almost entirely, on money/income from DTR. Mr. Pocklington identified (on probation forms) $300,000 in income from DTR. While he characterizes this income as belonging to his wife, it is how Mr. Pocklington pays both his and his wife's expenses, which he identified as totaling $241,639.80 a year. Mr. Pocklington claimed the sum of $326,328 in total cash inflows for the year - $300,000 (or 92%) of which comes from DTR. Comer Declaration, Ex. "C".

[7] • DTR is supposed to be a company operating a business. (See, e.g., July 2012 bank statement for DTR shows $30,000 in deposits and $36,927.03 in expenditures. (Comer Declaration, Ex. "I".) Yet, DTR posted the bail money for Mr. Pocklington. (Eva Pocklington Declaration, Ex. "3") There is no denying that this is a personal expense of Mr. Pocklington and not a company expense.

[8] Reporter's Transcript for the September 16, 2013 hearing (Docket Item No. 119, 92:3-19) ["THE COURT: . . .[¶] [I]f you feel that you have enough authority to write a check for $8,000 for your personal medical expenses -- and that's not medical insurance. Mr. Eldred testified that part of his compensation package was health insurance, but writing or authorizing payment for $8,000 worth of medical treatment, that's not health insurance. **That's payment of a personal expense. [¶] So someone who thinks that their authority extends to the point where they can pay their personal medical expenses out of the corporate account, that tends to show that they have control, not just check writing authority.**

MR. ROMNEY: There is no question, Mr. Pocklington had control over the (footnote continued)

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  Court found that Mr. Pocklington should have disclosed an $8,671 payment to his
2  doctor as <u>his income</u> even though it technically came from the corporate account of
3  a company he managed and was a payment on his behalf.
4
5           **B.      Pocklington Fails to Rebut His Ownership of the Bail Money.**
6       Mr. Pocklington apparently relies on the Declaration of Eva Pocklington to
7  establish that DTR owns the bail money. He also offers his wife's declaration to
8  establish that (a) DTR only contains the separate property of Eva Pocklington, (b)
9  DTR did not gift the bail money to Mr. Pocklington, and, (c) DTR expects the bail
10 money to be returned when the Court exonerates the bail. The declaration, however,
11 fails to prove these facts because Eva Pocklington lacks foundation to make the
12 legal conclusions she offers. (Balcombe filed separate evidentiary objections).
13
14       *First*, Mr. Pocklington submitted no admissible evidence that Eva
15 Pocklington formed DTR with her separate property. While the Eva Pocklington
16 Declaration tries to assert that she and Mr. Pocklington were married in a separate
17 property jurisdiction (an undisclosed province in Canada) and that DTR was
18 capitalized solely with her separate property, she fails to supply most of the key
19 facts, like where did she get that money; when; where has that money been; was it
20 commingled before; when was it deposited into DTR; who had control over it
21 before; why does he have essentially exclusive control over it now? Instead, she
22 just offers an unsupported legal conclusion, which lacks foundation.
23
24 _____
25
26 accounts for the purposes of furthering the businesses.
27 THE COURT: How does paying one's personal medical expenses further the purposes of the business? It doesn't. **It's a personal expense.**"]
28

1076828.1                              9
REPLY TO OPPOSITION TO MOTION TO LEVY ON BAIL OF NON-PARTY JUDGMENT CREDITORS

*Second*, Mr. Pocklington submitted no admissible evidence that Eva did not gift the bail money to DTR or that DTR did not gift that money to Mr. Pocklington. The Eva Pocklington declaration tries to establish some of these things, but clearly cannot. In part because the declaration explains that in December 2011 (prior to DTR posting Mr. Pocklington's bail), Eva Pocklington transferred *all ownership* of DTR to a Delaware Trustee. Hence, she lacks personal knowledge as to who permitted or why they permitted him unfettered access to take the bail money.

But, at the same time, any and all "Trustee" arguments must fail, because Mr. Pocklington solely manages DTR and makes its decisions. No one else "owns" the company but would allow him to just take $100,000 whenever he wants for his own personal use. So, who is the Trustee? Why was this person named? Where is his/her declaration? What is their relationship to Peter Pocklington? We know Peter Pocklington admits to using supposedly corporate funds to post his bail. This is clearly not a corporate purpose. It was a gift to himself…a personal expenditure. What legitimate Trustee would permit that?

*Third*, Mr. Pocklington submitted no admissible evidence that DTR expects the bail money to be returned to DTR. Again, while Eva Pocklington tries to make this request in her declaration, at the time of the posting of the bail, she was **not** the owner of the company; **not** the sole manager of the company; **not** the Trustee; and she clearly lacks personal knowledge as to what or why DTR would allow such transparent looting of its corporate funds…if they were truly corporate.

### C.     The Authorities Cited By Mr. Pocklington Are Inapposite.

Mr. Pocklington cites several authorities for the proposition that "[m]oney coming from a third party, deposited with the court as bail for the defendant, cannot be garnished by a writ of execution which names only the defendant as the debtor."

Opposition, p. 7.[9]  This is not any of those cases.

Here, Mr. Pocklington posted his own bail with a check from DTR. DTR is a limited liability company.  As an entity, it cannot act other than through an individual, and specifically, its one-and-only manager, Peter Pocklington. (Comer Declaration, Ex. "G")  In short, Mr. Pocklington caused DTR to post his own bail. This is not a "third party" consistent with the cases cited by Mr. Pocklington.  In fact, in *Rubenstein*, 971 F.2d at 297, relied upon most heavily by Mr. Pocklington, the court found it critical that the defendant Rubenstein never had access to the bail funds, stating: "[W]hen Sherman wired the funds, he sent them not to Rubenstein himself, but to the client trust fund account for the law firm of Rubenstein's attorney. **Rubenstein never had access to the funds.**" In contrast, Mr. Pocklington *always* had access to the funds.

### D.   Mr. Pocklington Is The Alter Ego Of DTR.

If this Court were to conclude that DTR is the owner of the bail money, it should still order that these funds be used to satisfy a portion of the Balcombe judgment because Peter Pocklington is the alter ego of DTR.[10]

---

[9] *United States v. Rubenstein*, 971 F.2d 288 (9th Cir. 1992) [Bail belonged to third-party doctor that posted bail for defendant]; *United States v. Parr*, 594 F.2d 440 (5th Cir. 1979) [As between third-party who posted bail and defendant, the bail money belonged to third-party]; *United States v. Bursey*, 515 F.2d 1228 (5th Cir. 1975) [Bail belonged to parent that posted it]; *United States v. Salyer*, No. 2:10-CR-0061 LKK, 2014 WL 412088 (E.D. Cal. Feb. 3, 2014) report and recommendation adopted, No. 2:10-CR-0061 LKK, 2014 WL 1270583 (E.D. Cal. Mar. 26, 2014) [Bail belonged to the trust of the sister of the defendant that posted it].

[10] The court in *Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1066 (C.D. Cal. 2002) summarized the well settled law of alter ego: '" "The (footnote continued)

Here, alter ego is easily established. From the facts set forth in the moving papers, it is undeniable that Mr. Pocklington controls DTR, so much so that he is able to unilaterally able to pay his personal $100,000 bail deposit.

Plus, this is a classic example of inequity. Mr. Pocklington owes his creditors millions of dollars. On the one hand, he asserts that these creditors are precluded from reaching the money in DTR because he is not its owner. Yet, at the same time, by virtue of his status as the sole manager of DTR, he has the ability to use the corporate account for any personal expenditure he sees fit. This is the exact situation the alter ego doctrine was designed to remedy.

Finally, there is nothing preventing this Court from properly deciding the alter ego issue. Mr. Pocklington cited no law to the contrary. If the Court is empowered to determine who is the proper owner of the bail money (which Mr. Pocklington concedes it is), that determination necessarily involves examining whether the entity that put up the bail money is a legitimate a third-party, or merely the defendant acting through a sham entity. Here, it is transparently the latter.

---

alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation." [Citation omitted.] The purpose of the doctrine is to bypass the corporate entity for the sole purpose of avoiding injustice. … "The terminology 'alter ego' or 'piercing the corporate veil' refers to situations where there has been an abuse of corporate privilege, because of which the equitable owner of a corporation will be held liable for the actions of the corporation." [Citation omitted.] …. [¶] Before the doctrine may be invoked, two elements must be established: " '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' " [Citation omitted.] "'

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## CONCLUSION

For the reasons stated herein, Balcombe respectfully requests that the Court grant this motion to levy on the bail deposit.

DATED: March 3, 2015          **CASSELMAN LAW GROUP**

By: /s/ Kirk S. Comer
           KIRK S. COMER
Attorneys for Non-Parties The Ageless Foundation, Inc. and Naomi Balcombe

## CERTIFICATION OF SERVICE

I hereby certify that on March 3, 2015 I electronically filed a document entitled: **REPLY OF THE AGELESS FOUNDATION AND BALCOMBE IN SUPPORT OF MOTION TO LEVY ON BAIL OF NON-PARTY JUDGMENT CREDITORS** with the Clerk of the Court using the CM/ECF system.

Respectfully Submitted,
*/s/Kirk S. Comer*
Kirk S. Comer